# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

LAMAR FLORENCE,          :

          Petitioner,      :      Case No. 3:07cv152

      vs.              :      District Judge Thomas M. Rose
                                    Magistrate Judge Sharon L. Ovington

EDWIN C. VOORHIES, JR.,    :
      WARDEN,

                        :

          Respondent.

---

# REPORT and RECOMMENDATIONS[1]

---

This matter is before the Court on *pro se* Petitioner Lamar Florence's original petition for writ of habeas corpus (Doc. #2) and his first amended petition (Doc. #14); Respondent's return of writ (Doc. #5) and supplemental return of writ (Doc. #15); Petitioner's traverse (Doc. #6) and supplemental traverse (Doc. #16); and the record as a whole.

## FACTUAL BACKGROUND

The factual findings set forth on direct appeal by the Montgomery County, Ohio, Court of Appeals for the Second Appellate District "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

correctness by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied,* 527 U.S. 1040 (1999). As Petitioner has not rebutted that presumption, the findings of fact binding on this Court are as follows:

> Sheri Shehee had been involved in sexual relationships with both [Petitioner] Florence and the victim, Steven Mayberry. She had known Florence for eight years and had dated him on and off during that time. They had a five year old son who lived with Shehee. Although Florence did not live with Shehee in March 2003, she testified that their relationship was "on" at that time. Shehee had also known Mayberry for about eight years. The men knew each other enough to recognize one another. According to Shehee, in March 2003, Mayberry knew that Shehee was involved with Florence, but Florence did not think that Shehee was involved with Mayberry. Florence did know that Shehee and Mayberry had had a sexual relationship in the past. Shehee also stated that Florence was involved with other women at this time and that Mayberry was married.

> Shehee was uncooperative with the prosecution of the case against Florence. Because a material witness warrant had been issued, Shehee's deposition was taken, at her request, on February 11, 2004. The trial judge was present at the deposition. Shehee also testified at trial. She presented substantially different versions of events on these two occasions, although the basic framework of the events was the same.

> Shehee testified that, in the early evening of March 6, 2003, Florence came to her house at 1331 Swisher Avenue in Dayton to pick up their son and to take him

to his grandmother's house because Shehee had to be at work very early the next morning.  After dropping off their son, Florence returned to the house, and he and Shehee had a brief conversation about having sex. Shehee indicated to Florence that she was not interested, and he left after a little bit of argument.  Shehee talked to Mayberry on the telephone later that evening, then went to sleep.

Mayberry showed up at Shehee's house sometime after she had gone to bed.  When she let him in, he reported that Florence was outside.  Shehee confirmed this by looking out the window.  She saw Florence standing by his car, smoking and shaking his head.

According to Shehee's testimony at trial, she told Mayberry to wait upstairs while she went downstairs, expecting to talk with Florence through her door. Instead, she heard Florence putting a key into the lock. She had not believed that he had a key to the house because he was not living there at that time.  Fearful about the fact that Florence was entering the house, Shehee hid in a corner behind a television while Florence entered and headed upstairs.  Shehee then grabbed Florence's keys, which he had left in the door, and ran outside wearing only her robe.  She used the keys to drive Florence's car to a friend's house because the keys to her own car had been upstairs in the bedroom.

When Shehee arrived at her friend Tyleah Davis's house a few minutes later, she called Florence to see what had happened with Mayberry.  He sounded upset and anxious, and he wanted to know where she was.  He would not answer Shehee's questions about what had happened.  Shehee hung up on Florence and called Mayberry's cell phone, getting no answer.  She testified that she did not call the police at this point because she

did not think there was any need to do so. She borrowed some clothes from her friend, then headed to her aunt's house.

Shehee attempted to convince one of her cousins to come back to the house with her because she feared an altercation with Florence. When the cousin was initially unwilling to go, Shehee told him that Florence had pistol-whipped Mayberry. Shehee then drove near the house to see if Mayberry's car was still where he had parked it earlier. She saw that it was, but that her car was gone.

With another cousin's help, Shehee later returned Florence's car to his house. When Shehee called Florence again, he continued to ask where she was. After returning Florence's car, Shehee went to her mother's house. At this point, Shehee was scared, stunned, crying, and upset. Her mother called 911, and they reported to the operator that Florence had hit Mayberry and that they were worried about what else might have happened at the house. Two to three hours had elapsed from the time that Shehee fled the house until the time that she and her mother called 911.

Throughout her trial testimony, Shehee maintained that she had not seen either man with a gun the night of the shooting and that she had not seen any altercation between Florence and Mayberry.

In her videotaped deposition, she had given a very different account of events, which was consistent with the accounts she had given to the 911 operator and to detectives on earlier occasions. After the state indicated that it had been surprised by Shehee's testimony at trial, it was permitted to play the deposition testimony for the jury at trial.

According to the deposition testimony, the trouble similarly began when Mayberry arrived at Shehee's house and told her that Florence was outside. After Shehee looked out the window, she and Mayberry had been heading out of her bedroom on the second floor when Florence came up the stairs. Florence had a gun and tapped it several times on Mayberry's temple, motioning with his head that Mayberry should go back into the bedroom. Shehee recognized this gun as a Desert Eagle that Florence always carried. Mayberry backed up onto the bed while trying to calm Florence down. When Florence hit Mayberry in the head with the pistol, Shehee ran from the room, down the stairs, and out to Florence's car. She heard Mayberry say, "Man, I don't got nothing" as she fled. Shehee testified at her deposition that Mayberry had been lying on the bed when she left and that Florence would not have permitted him to leave. Shehee stated that Mayberry had not had a gun, that he had done nothing aggressive toward Florence, and that his only movement had been to cover his face with his hands. Shehee said in her deposition that, when she had called Florence after fleeing the house, he had told her to "cut the small talk" and come back to help him get rid of the body.

Shehee's versions of events converge again after she has fled from her house. She went to the home of a friend for clothes, and then managed to return Florence's car to his house with the help of a cousin. She also verified that Mayberry's car was still at her house by driving nearby. Over a period of a couple of hours, Shehee made several calls to the cell phones of Florence and Mayberry, never getting an answer from Mayberry. The friends and family members that Shehee encountered during this period found her to be very upset and showing various signs of distress, including shaking, crying, and an inability to react normally. Finally, Shehee's mother called the police and reported

the possibility of a serious altercation at 1331 Swisher.

Officer Estrellado arrived at the scene in response to the 911 call. As he approached the house from up the street, he saw Florence moving toward the street looking both ways. When Estrellado ordered him to stop, Florence did not immediately do so. He continued to move toward the street, angling his body away from the officer as if to hide something. Estrellado saw a glint of something metallic at Florence's left side. When Florence reached a car along the street, Estrellado heard a "metallic clank" that he believed to be a gun hitting the ground. From that point on, Florence was cooperative. Estrellado testified that there had been a "messy" bloody residue on the back of Florence's pants, as well as a bloody residue on his hands. Estrellado retrieved a Desert Eagle handgun from the spot where Florence had been standing when Estrellado heard the "clank." The gun was cocked and ready to fire. Police officers found Mayberry's partially clothed body in the upstairs bedroom of the house shortly thereafter, with a gunshot wound to the back of the head, among other injuries.

Forensics experts determined that the Desert Eagle was the gun that had inflicted Mayberry's fatal wound, and that the gun had been in contact with Mayberry's skin when it was fired. Mayberry's blood was found on the weapon and on the steering wheel and gear shift of Shehee's car, which had been parked nearby.

Florence testified on his own behalf at trial. He stated that, when he had returned to Shehee's house and come upstairs, Mayberry had been "agitated," "excited," and "aggressive," and had pulled a gun from his coat pocket. He testified that the two men had wrestled over the gun and that it had fired accidentally during the struggle. He testified that he did not call the police because he did not think they would believe him due to his felony

record.  He called Shehee and asked, "Why didn't you
stop him?"  He left the house in Shehee's car, but
returned a short time later, shook the victim, and said
"You can't be dead."  Then he went outside and
encountered Officer Estrellado.  Florence testified that
he had not meant for Mayberry to die.  He stated that
Mayberry had been falling sideways when the gun
"went off by itself one time."  On cross-examination,
Florence was unable to explain why he had felt the need
to get rid of the gun if it had gone off accidentally and
why the victim's pants had been partially removed.

(Doc. #5, Exh. 12, *State of Ohio v. Florence*, Case No. CA 20439 (Ohio Ct. App. Aug.

19, 2005)).

## **PROCEDURAL HISTORY**

On March 14, 2003, the Montgomery County Grand Jury indicted

Petitioner on two counts of aggravated murder as defined in Ohio Rev. Code §

2903.01(B); one count of kidnapping as defined in Ohio Rev. Code § 2905.01(B)(2);

one count of aggravated robbery as defined in Ohio Rev. Code § 2911.01(A)(1);

and one count of having weapons while under disability as defined in Ohio Rev.

Code § 2923.13(A)(2); all with firearm specifications.  (Doc. #5, Exh. 1).  On April

17, 2003, Florence entered a plea of not guilty by reason of insanity.  (*Id.*, Exh. 2).

On August 27, 2003, Florence was found competent to stand trial and the

case proceeded to a jury trial.  (*Id.*, Exh. 3).  On March 22, 2004, the jury convicted

Florence of one count of aggravated murder, on a lesser-included offense of

murder, kidnapping and having a weapon while under disability. On March 26, 2004, Florence was sentenced to a term of life for aggravated murder, 15 years to life for murder and five years for kidnapping, all to be served concurrently. The trial court also sentenced Florence to three years for having a weapon while under disability and to three years of actual incarceration on the firearm specifications, both to be served consecutively to the other sentences. (*See id.*, Exh. 4, *Florence*, Case No. CA 20439 (Ohio Ct. App. Mar. 26, 2004)).

*Direct Appeal*

Petitioner timely appealed his conviction to the Second District Court of Appeals, Montgomery County, Ohio. (Doc. #5, Exh. 5). On August 9, 2004, the State filed a motion to dismiss due to Petitioner's failure to timely file a transcript. (*Id.*, Exh. 6). On August 30, 2004, Petitioner, represented by new appellate counsel, filed a "Brief of Appellant pursuant to *Anders v. California* (1967), 386 U.S. 738." In that "*Anders*" brief, Petitioner's counsel raised one assignment of error:

> When proposed hearsay testimony is sought to be introduced into evidence as an excited utterance of the speaker it is error to allow said testimony when the utterance is approximately three (3) hours after the incident mentioned by the speaker and the speaker had calmed down for a time at least two (2) hours before the utterance sought to be admitted was made.

(Doc. #5, Exh. 7).

On October 6, 2004, the Court of Appeals issued a decision granting Petitioner 60 days in which to file a *pro se* brief. (*Id.*, Exh. 8). On October 27, 2004, however, the Court of Appeals issued an order vacating that prior decision, finding that the putative *Anders* brief filed by Petitioner's counsel in fact constituted a "full merits brief." (*Id.*, Exh. 9).

On March 29, 2005, another new attorney for Petitioner filed a second brief listing the following assignments of error:

> 1. The trial court erred to the prejudice of appellant and in violation of his rights to due process of law under the United States and Ohio Constitutions and his right to confrontation under the Sixth Amendment and Article I, Section 10, Ohio Constitution 6 when it permitted the admission of prejudicial hearsay.
>
> 2. The trial court committed reversible error and deprived appellant of due process of law by failing to instruct the jury on the lesser included offense of voluntary manslaughter.
>
> 3. The trial court committed reversible error and denied appellant due process of law and a fair trial when it failed to instruct the jury of the affirmative defense of self defense.
>
> 4. Appellant was denied effective assistance of counsel, and due process of law in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and under Article I, Section 10 of the Ohio Constitution.

5.  Appellant was denied due process of law and his right to a fair trial in violation of his Sixth Amendment right to the United States Constitution when the prosecution committed prosecutorial misconduct by knowingly using perjured testimony.

6.  The trial court erred to the prejudice of appellant by excluding evidence of the prosecuting witness' propensity toward carrying a gun, in violation of appellant's right to present a defense and to a fair trial which rights are secured to him by the due process clause of the Fourteenth Amendment, and Article I, Section 16, of the Ohio Constitution.

7.  The trial court committed reversible error and violated appellant's right to due process of law by failing to provide appellant a trial within the time prescribed by law.

(*Id.*, Exh. 10).  The State filed a response.  (*Id.*, Exh. 11).  On August 19, 2005, the

Second District Court of Appeals affirmed the judgment of the trial court.  (*Id.*,

Exh. 12, *Florence*, Case No. CA 20439 (Ohio Ct. App. Aug. 19, 2005)).

On October 3, 2005, Petitioner, through counsel, filed a timely appeal in the

Ohio Supreme Court.  (*Id.*, Exh. 13).  In his memorandum in support of

jurisdiction, Petitioner raised the following propositions of law:

1. The trial court violated the appellant's right to due process and right to present a defense, as guaranteed by the United States and Ohio Constitutions, by failing to allow evidence of the victim's propensity to carry a weapon.

2. The trial court violated the appellant's due process

-10-

rights, as guaranteed by the United States and Ohio
Constitutions, by failing to instruct the jury on self
defense and voluntary manslaughter.

3. Counsel was ineffective, in violation of the appellant's
Sixth Amendment right to counsel, by failing to request
an instruction on self-defense and voluntary
manslaughter.

4. The trial court violated the appellant's right to
confront witnesses and right to due process, as
guaranteed by the United States and Ohio
Constitutions, by allowing in out of court statements
under the excited utterance" hearsay objection.

(*Id.*, Exh. 14). The State filed a response. (*Id.*, Exh. 15). On December 28, 2005,

the Ohio Supreme Court denied Petitioner leave to appeal and dismissed the

appeal as not involving any substantial constitutional question. (*Id.*, Exh. 16, *State*

*of Ohio v. Florence*, Case No. 05-1880 (Ohio Dec. 28, 2005)).

<u>*Application to Reopen in the Ohio Court of Appeals*</u>

On July 18, 2005, Petitioner filed a *pro se* application in the Second District

Court of Appeals, Montgomery County, Ohio, to reopen the direct appeal

pursuant to Ohio App. R. 26(B), asserting that his appellate counsel was

ineffective for failing to raise certain issues on appeal, as follows:

Appellate counsel rendered constitutionally ineffective
assistance of counsel where he failed to claim that the
trial attorney was ineffective for his failure to object to
the trial court's giving of the foregoing mandatory
presumption of law that not only shifted the burden of

> proof but also eased the prosecution's burden of proof
> to less than beyond a reasonable doubt. Referencing:
> *County Court of Ulster County v. Allen*, [442 U.S. 140,] 99
> S.Ct. 2213 [1997]; *Cage v. Louisiana*, [498 U.S. 39,] 111
> S.Ct. 328 (1990); *Sullivan v. Louisiana*, [508 U.S. 275,] 113
> S. Ct. 2078 (1993).

(*Id.*, Exh. 17). The State filed a response. (*Id.*, Exh. 18). On January 26, 2006, the

Second District Court of Appeals denied Florence's application to reopen. (*Id.*,

Exh. 19, *Florence*, Case No. CA 20439 (Ohio Ct. App. Jan. 26, 2006)).

On February 27, 2006, Petitioner, acting *pro se*, filed an appeal in the Ohio

Supreme Court. (*Id.*, Exh. 20). In his memorandum in support of jurisdiction,

Petitioner raised the following three assignments of error, quoted *verbatim*:

> 1. The Court of Appeals erred and abused its discretion
> in granting the Appellee-State of Ohio a *sua sponte*
> motion to dismiss/summary judgment in violation of
> appellant's absolute right to procedural due process of
> law as guaranteed by the United States Constitution.
>
> 2. Where in a prosecution for crime the trial court
> during jury instructions equates "innocence" with "not
> guilty" the court creates a conclusive mandatory
> presumption that not only shifts the burden of proof but
> also directs a verdict against the defendant and is plain
> error and a manifest miscarriage of justice.
>
> 3. Appellant was deprived of the effective assistance of
> trial and appellate counsel where neither attorney
> recognized, argued or briefed the fact that the trial court
> directed a verdict of guilt against appellant.

(*Id.*, Exh. 21). On April 26, 2006, the Ohio Supreme Court denied Petitioner leave

to appeal and dismissed the appeal as not involving any substantial constitutional question. (*Id.*, Exh. 22, *State of Ohio v. Florence*, Case No. 06-469 (Ohio Apr. 26, 2006)).

*Post-Conviction Motion*

Meanwhile, on April 8, 2005, Petitioner, through counsel, filed a motion to vacate or set aside his sentence in the Montgomery County Court of Common Pleas, setting forth the following claim, again quoted *verbatim*:

> Defendant was denied due process of law and his right to a fair trial in violation of his Sixth Amendment right to the United States Constitution when the prosecution committed prosecutorial misconduct by knowingly using perjured testimony.

(Doc. #5, Exh. 23). The State filed a response on April 12, 2005 (*id.*, Exh. 24), and a motion for summary judgment on April 20, 2005. (*Id.*, Exh. 25). To date, nothing before this Court indicates that the Montgomery County Common Pleas Court has issued a decision regarding the petition to vacate or the State's summary judgment motion.

*Federal Habeas Corpus*

On April 25, 2007, Florence filed *pro se* his original Petition for Writ of Habeas Corpus setting forth the following grounds for relief and accompanying supporting facts:

**GROUND FOR RELIEF NO. 1:** The cumulative effect of the State court's action at trial deprived petitioner of his absolute right to procedural due process of law.

**Supporting Facts:** Even if the State trial court and court of appeals resolution of petitioner's claims did not warrant reversal as individual grounds for relief, the cumulative effect of the State court decisions deprived petitioner of his "absolute" right to procedural due process of law under the 14th Amendment to the U.S. Constitution as determined by the United States Supreme Court.

**GROUND FOR RELIEF NO. 2:** Ineffective assistance of appellate counsel.

**Supporting Facts:** Appellate counsel failed to recognize, argue and brief the strongest arguments revealed by State trial record including fact that State trial court gave a burden shifting/reliving jury instruction at trial by equating "innocence" with "not Guilty" and failed to raise and argue a *Apprendi-Blakely* claim which involved subject matter jurisdiction as to sentence which is a jurisdictional defect that may not be waived nor procedurally defaulted under *United States v. Griffin*, (1938), 303 U.S. 226, 58 S.Ct. 601.

(Doc. #2 at ¶12). Respondent filed a return of writ in response to that petition (Doc. #5), and Petitioner responded with a traverse. (Doc. #6).

On April 29, 2009, this Court granted Petitioner's motions for leave to amend his habeas corpus petition. (Doc. #13; *see* Doc. ##8, 10). In his Amended Petition filed on June 1, 2009, Plaintiff raised the following additional grounds for relief:

**GROUND FOR RELIEF NO. 1:** Petitioner's Due Process rights as guaranteed by the United States Constitutions were violated, when the trial court failed to allow evidence of the victims propensity to carry a weapon.

**Supporting Facts:** That petitioner a criminal defendant, "be afforded a meaningful opportunity to present a complete defense".

**GROUND FOR RELIEF NO. 2:** The Trial Court violated Petitioner's Due Process rights, as guaranteed by the United States and Ohio Constitutions, by failing to instruct the jury on self-defense and voluntary manslaughter.

**Supporting Facts:** A trial court is required to give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and fulfill its duty as the factfinder.

**GROUND FOR RELIEF NO. 3:** Ineffective Assistance of trial counsel, in violation of Sixth Amendment right, by counsel's failure to request an instruction on self defense and voluntary manslaughter.

**Supporting Facts:** Counsel was ineffective for failing to request either a self defense or a voluntary manslaughter instruction, in light of the evidence presented at trial.

**GROUND FOR RELIEF NO. 4:** The Trial Court violated Petitioner's right to Confront Witnesses, and right to Due Process, by allowing in out of court statements under the "excited utterance" hearsay objection.

**Supporting Facts:** The trial court violated Petitioner's

right to Confrontation by allowing out of court statements of witnesses Sheehee [sic], Baldwin, Zlholz and Williams [sic] in a 911 call to be entered as substantive evidence.

**GROUND FOR RELIEF NO. 5:** Petitioner was deprived the effective assis[ta]nce of Appellate Counsel when he failed to raise the issue of trial counsel's ineffectiveness for failing to object to the trial court's error when in a prosecution for crime the trial court during jury instructions equates "innocence" with "not guilty" the court creates a conclusive mandatory presumption that not only shifts the burden of proof but also directs a verdict against the defendant and is plain error and a manifest miscarriage of justice.

**Supporting Facts:** The trial court shifted the burden of proof and direct a verdict against petitioner.

(Doc. #14 at ¶12). Respondent then filed a supplemental return of writ addressing those new claims (Doc. #15), to which Petitioner filed an additional traverse. (Doc. #16).

## APPLICABLE LAW

### The Antiterrorism and  Effective Death Penalty Act ["AEDPA"][2]

A federal court may consider a state prisoner's petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, a writ of habeas corpus may not issue with respect to any claim adjudicated on

---

[2]Codified in large part at 28 U.S.C. § 2254. *See* Pub.L. No. 104-132, 110 Stat. 1214.

the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The phrases "contrary to" and "unreasonable application" have independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in . . . [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable . . . and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted); *see Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006) (quoting in part *Bell*, 535 U.S. at 694), *cert. denied*, 549 U.S. 1255 (2007).

"A decision is an 'unreasonable application' of clearly established Supreme Court law if a 'state court correctly identifies the governing legal principle from [Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case.'" *Gray v. Moore*, 520 F.3d 616, 621 (6th Cir.) (quoting in part

*Williams v. Taylor*, 529 U.S. 362, 413 (2000)), *cert. denied*, ___ U.S. ___, 129 S. Ct. 216 (2008). "An unreasonable application of federal law is one that is 'objectively unreasonable' and not merely incorrect." *Sinkfield v. Brigano*, 487 F.3d 1013, 1016 (6th Cir.) (citations omitted), *cert. denied*, 552 U.S. 961 (2007).

For purposes of habeas review, a state court's determinations of factual issues are presumed correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). That deference extends to the state court's credibility assessments, *see Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001), and to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). "Indeed, the presumption applies with particular force to credibility determinations, as the Supreme Court has ruled that such determinations receive 'special deference' from the federal courts." *Id.* (citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)). The same presumption also applies to state appellate courts' findings of fact made on review of the state trial record. *Sumner v. Mata*, 449 U.S. 539 (1981); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003).

**Procedural Default**

In recognition of the state courts' equal obligation to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, federal law requires that a state defendant with federal constitutional claims first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

In order for a claim to be considered "fairly presented," a habeas corpus petitioner must present both the factual and legal underpinnings of his claim to the state courts. *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). This means that the petitioner must present his claim to the state courts as a federal constitutional issue and not merely as an issue arising under state law. *Id.* (citing *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees* , 822 F.2d 1418 (6th Cir. 1987). A claim will be considered "fairly presented," even without citation to specific provisions of the Constitution, if that claim's presentation was "likely to alert the court to the claim's federal nature." *Nadworny v. Fair*, 872 F.2d 1093, 1097 (1st Cir. 1989) (quoting *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 192 (2d Cir. 1982) (*en banc*)).

A claim is considered fairly presented if the claim was presented to the

state courts under the same theory as that later presented for federal habeas corpus review. *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004), *cert. denied*, 544 U.S. 1003 (2005). In the context of ineffective assistance of counsel claims, the claim in the federal court must be based on the same allegedly ineffective conduct as that identified in the state court. *Caver v. Straub*, 349 F.3d 340, 346-47 (6th Cir. 2003). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).

If a petitioner fails to fairly present his claims to the state's highest court or commits some other procedural default relied on by the state's highest court to preclude review of the merits of the petitioner's claims there, and if no avenue of relief remains open or it would be futile for the petitioner to continue to pursue his claims in the state courts, the petition is subject to dismissal with prejudice on the ground that the petitioner has waived his claims for habeas corpus relief. *See O'Sullivan*, 526 U.S. at 847-48; *Harris v. Reed*, 489 U.S. 255, 260-62 (1989); *McBee v. Grant*, 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, a petitioner's claims have not

been considered by the state's highest court and the petitioner no longer has an avenue to present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995).

## ANALYSIS

> *Original Petition, Ground for Relief #1*: "*The cumulative effect of the State court's action at trial deprived petitioner of his absolute right to procedural due process of law.*"

In support of this first Ground for Relief stated in his original Petition, Petitioner states as follows: "Even if the State trial court and court of appeals resolution of petitioner's claims did not warrant reversal as individual grounds for relief, the cumulative effect of the State court decisions deprived petitioner of

his 'absolute' right to procedural due process of law under the 14th Amendment to the U.S. Constitution as determined by the United States Supreme Court." (Doc. #2 at ¶12).

Respondent first argues that Petitioner did not present this "cumulative error" claim to the Ohio courts. (Doc. #5 at 13). A review of the record confirms that Respondent is correct. On direct appeal, Petitioner did not raise such a claim in either of his briefs to the state appellate court (*see* Doc. #5, Exhs. 7, 10), or in his brief to the Ohio Supreme Court. (*See id.*, Exh. 14). He also did not list such a claim in his application to reopen his direct appeal in the state appellate court (*see id.*, Exh. 17), or his second appeal to the Ohio Supreme Court. (*See id.*, Exh. 21). Finally, Petitioner did not mention a cumulative error ground even in his post-conviction motion in the state trial court. (*See id.*, Exh. 23).

Because Petitioner has not demonstrated cause for or prejudice from this procedural default, or that failure to consider his "cumulative error" claim will result in a "fundamental miscarriage of justice," *see Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495-96, Petitioner has waived that claim for purposes of federal habeas review, and it cannot be considered by this Court.

Petitioner attempts to overcome this omission of an explicit "cumulative error" claim by arguing that the state courts could not have decided the

arguments he <u>did</u> present there "without implicitly considering the 'cumulative' effect of the claimed errors." (Doc. #6 at 3). Even were this Court to accept that proposition (which it does not), as Respondent's answer aptly notes, under the case law of the Sixth Circuit, "cumulative error claims are not cognizable on habeas." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)). Both because it has been procedurally defaulted and waived, <u>and</u> because it is not cognizable on habeas corpus review, then, Petitioner's request for a writ of habeas corpus based on cumulative trial error should be denied.

> *Original Petition, Ground for Relief #2*: *"Ineffective assistance of appellate counsel."*

Petitioner argues as follows in support of the second Ground for Relief raised in his original petition: "Appellate counsel failed to recognize, argue and brief the strongest arguments revealed by [the] State trial record including [the] fact that State trial court gave a burden shifting/reliving jury instruction at trial by equating 'innocence' with 'not Guilty[,]' and failed to raise and argue a *Apprendi-Blakely* claim which involved subject matter jurisdiction as to sentence which is a jurisdictional defect that may not be waived nor procedurally defaulted under *United States v. Griffin*, (1938), 303 U.S. 226, 58 S.Ct. 601." (Doc. #2 at ¶12).

The specific jury instruction to which the first portion of that Ground for Relief presumably refers (*see* Doc. #5, Exh. 17 at 2) states, in its entirety, as follows:

> You may not discuss or consider the subject of punishment. Your duty is confined to the determination of guilt or innocence of the Defendant and in the event that the Defendant is found guilty, the duty to determine the punishment is placed by law upon the Court.

(*Id.*, Exh. 27 at 45).

In his brief before the state appellate court on his motion to reopen his appeal, Petitioner argued that the foregoing instruction was erroneous because by "instruct[ing the jury in his case] that it was their duty to determine whether [he] was guilty or innocent," the trial court "not only shifted the burden to [Petitioner] to prove his innocence, but [also] eased the prosecution's burden of proof to less than beyond a reasonable doubt." (*Id.*, Exh. 17 at 2). Petitioner's second Ground for Relief here, then, in effect argues that appellate counsel was ineffective for not challenging Petitioner's conviction on appeal based on the alleged impropriety of that instruction.

Once again, Respondent first responds by asserting that Petitioner has procedurally defaulted and waived any such claims by failing to present the same claims first to the state courts. (Doc. #5 at 13). Respondent correctly

observes that Petitioner never raised any claim in state court of ineffective assistance of appellate counsel based on the sentencing implications of *Blakely v. Washington*, 542 U.S. 296 (2004) or *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (*Id.*) (*see* Doc. #5, Exhs. 7, 10, 14, 17, 21, 23). Petitioner's suggestion that the alleged error amounts to a non-waiveable "jurisdictional defect" (*see* Doc. #6 at 5, 6) is unfounded.

Additionally, although Petitioner in his application to re-open his state court appeal <u>did</u> argue that appellate counsel was ineffective for "fail[ing] to claim that the trial attorney was ineffective [based on] his failure to object to the trial court's" instruction re "guilt or innocence" (*see* Doc. #5, Exh. 17 at 2), Respondent again correctly observes that the claim thus raised in the state court does <u>not</u> mirror the claim that Petitioner asserts here (*see id.* at 13) – *i.e.*, that appellate counsel was ineffective for "fail[ing] to recognize, argue and brief the strongest arguments . . . including [the] fact that State trial court gave a . . . jury instruction . . . equating 'innocence' with 'not Guilty.'" (Doc. #2 at ¶12). Petitioner's ineffective assistance of appellate counsel claim before this Court does <u>not</u> urge that appellate counsel was deficient for failing to raise <u>trial</u> counsel's ineffectiveness re that jury instruction. As such, the precise issue here was <u>not</u> presented in Petitioner's motion to the state appellate court.

To the extent that Petitioner subsequently alluded in his second Ohio Supreme Court appeal to a broader ineffective assistance of appellate counsel claim (*see* Doc. #5, Exh. 21), that reference did not resurrect that claim for habeas purposes, given the Ohio Supreme Court's practice of refusing to consider constitutional claims not first raised in the Ohio Court of Appeals. *See, e.g., State v. Jones*, 211 N.E. 2d 198, 199 (Ohio 1965), *cert. denied*, 383 U.S. 918, 951 (1966).

For the foregoing reasons, the Court concludes that both bases for ineffective assistance of appellate counsel asserted in Ground Two of Petitioner's original petition (Doc. #2 at ¶12) have been procedurally defaulted. Having failed to demonstrate cause for or prejudice from this procedural default, or that failure to consider his "cumulative error" claim will result in a "fundamental miscarriage of justice," *see Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495-96, Petitioner has waived those claims for purposes of federal habeas review, and they cannot be considered by this Court

Even were this Court to conclude that the reference to appellate counsel's ineffectiveness contained in Petitioner motion to reopen (*see* Doc. #5, Exh. 17) was sufficient to"fairly present" to the state court -- and thus preserve for habeas purposes – the subtly distinct issue raised in the first segment of Petitioner's ineffective assistance claim here (*see* Doc. #2 at ¶12), however, this Court still

would conclude that Petitioner's claim to that effect lacks merit. Upon considering Plaintiff's appellate challenge to the subject jury instruction, the Ohio Court of Appeals determined that "the jury instruction at issue cannot reasonably be interpreted in the manner suggested by Florence." (Doc. #5, Exh. 19 at 2-3). This Court agrees. The trial judge plainly and repeatedly articulated the "beyond a reasonable doubt" standard of proof necessary to convict Petitioner (*see id*., Exh. 27 at 36-47), and the instruction to which Petitioner now objects cannot fairly be construed to shift the burden to Petitioner to prove his "innocence." The jury instruction as given does not implicate any constitutional violation. The second Ground for Relief raised in Petitioner's original petition therefore should be denied, and the original petition should be dismissed in its entirety.

> *Amended Petition, Ground for Relief #1*: "*Petitioner's Due Process rights as guaranteed by the United States Constitutions were violated, when the trial court failed to allow evidence of the victim['s] propensity to carry a weapon.*"

In support of this Ground for Relief, Petitioner suggests only that the exclusion of the evidence to which he refers denied him "a meaningful opportunity to present a complete defense." (Doc. #14 at ¶12).

In a relatively recent decision, the Sixth Circuit offered the following summary of the law with respect to a habeas challenge to the state court's failure to admit evidence:

> "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, including the right to present relevant evidence . . . subject to reasonable restrictions." *Varner v. Stovall*, 500 F.3d 491, 499 (6th Cir. 2007) (citations and internal quotation marks omitted) (alterations in original). This court, however, has also stated that "[i]t is well settled that the Constitution does not guarantee a defendant the opportunity to present *any* evidence he desires." *Alley v. Bell*, 307 F.3d 380, 396 (6th Cir. 2002) [emphasis in original]. Indeed, "[o]nly if an evidentiary ruling is so egregious that it results in a denial of fundamental fairness [does] it . . . violate due process and thus warrant habeas relief." *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004) (internal quotation marks omitted) (alterations in original). Issues of state law, however, are ordinarily not properly subjected to collateral review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

*Fleming v. Metrish*, 556 F.3d 520, 534 (6th Cir.), *cert. denied,* __ U.S. __, 130 S. Ct. 103 (2009). Even if the state trial court's ruling had violated the petitioner's constitutional right to present a defense, relief still could be granted only if the error was not harmless, *i.e.*, if "the error 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (citing *Hereford v. Warren*, 536 F.3d 523, 528 (6th Cir. 2008) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

The presumptively correct factual findings of the Ohio Court of Appeals, *see* 28 U.S.C. §2254(e)(1); *Warren*, 161 F.3d at 360-61, again are instructive. Without definitively deciding whether the trial court ruled correctly on this evidentiary issue, the Ohio Court of Appeals determined that the exclusion of evidence concerning the victim's propensity to carry a gun was harmless error. The court stated:

> Florence claims that the state should not have been permitted to present evidence that he "carried a weapon prior to the incident complained of" while prohibiting the introduction of such evidence about Mayberry.
>
> The police recovered a Desert Eagle gun from the scene of the crime, where a police officer had observed Florence with something metallic in his hand and had heard the gun drop into the street alongside Florence just before he surrendered. The gun was described by police as large, heavy, powerful, Israeli-made, and somewhat unusual for a handgun. Forensics linked the gun found in the street with the casing found next to Mayberry's body. Mayberry's blood was found on the gun, and bruises on Mayberry's head matched the distinctive shape of the gun. Thus, there was no question at trial that the Desert Eagle was the gun that had killed Mayberry. The only uncertainly was who had brought the gun to the scene and how the events had unfolded.
>
> At trial, the state asked Shehee whether she had ever seen the Desert Eagle before, and she denied that she had. She also denied ever having seen Florence with this gun. The state then attempted to impeach Shehee with her deposition testimony about the gun. Shehee

admitted at trial that, in her deposition, she had stated that: 1) she recognized the gun; 2) she had identified it as a Desert Eagle; 3) she had identified it as the gun that Florence always had and took to work with him; and 4) she would recognize the gun if she saw it again. She then identified the gun in court.

Florence contrasts this testimony with defense counsel's attempt to elicit testimony about whether Mayberry had carried a gun. Defense counsel asked Shehee: "What weapons have you seen Mr. Mayberry carry?" The state objected and, after a sidebar, the jury was instructed to disregard the question. Florence claims that this evidence was "probative" and "admissible."

The state claims that, without evidence supporting a theory of self-defense, any evidence of Mayberry's propensity to carry a gun was irrelevant and prohibited by Evid. R. 404. With respect to Florence, however, the state argues that such evidence was permitted by Evid. R. 404(B) to show intent, opportunity, or lack of accident.

We take a slightly different approach to this analysis. In our view, evidence that the Desert Eagle belonged to Florence was admissible pursuant to Evid. R. 402 because it was relevant to the questions of whose gun was involved and who was the aggressor in the conflict between Mayberry and Florence. Because of its direct relevance to these issues, this testimony as to the ownership of the Desert Eagle was not character evidence with respect to Florence.

With respect to Mayberry, the state argues that evidence of carrying a gun was properly excluded under Evid. R. 404. However, it is arguable that such evidence was admissible under Evid. R. 404(A)(2) or Evid. R. 405(B) as a trait of character that was essential to Florence's

defense. It is also arguable that such evidence was admissible under Evid. R. 406 as evidence of habit.

Assuming, for the sake of argument, that evidence regarding whether Mayberry was known to carry a weapon had been admitted at trial and that it would have been helpful to the defense, we are unpersuaded that such evidence would have affected the outcome of the trial. The police did not find another gun, or any other weapon, at the scene of the shooting. The physical evidence strongly suggests that Florence hit Mayberry with the Desert Eagle because Mayberry's bruises were consistent with the shape of the gun. Moreover, the jury was justifiably skeptical of Florence's claim that Mayberry had been shot in the back of the head during a struggle for the gun, and Florence was unable to explain how Mayberry's pants came to be pulled down. For all of these reasons, we conclude that even if Florence had been allowed to offer evidence that Mayberry often carried a gun or other weapon, such evidence would not have affected the outcome of the trial.

(Doc. #5, Exh. 12 at 18-21)

Despite those findings, Petitioner argues in his traverse that the state court's analysis "is based solely on the supposition that the Petitioner carried the weapon into the house." (Doc. #16 at 6). Implying that the presence of only one gun at the crime scene leaves open "the possibility that the victim had the weapon," Petitioner urges that "[i]f in fact the victim had the weapon," then evidence that the victim often carried a gun "would have made a significant difference in the case." (*Id.*).

Petitioner's circuitous argument to that effect fails, however, because the state court's "supposition" was derived from compelling evidence that Petitioner, not Mayberry, was responsible for bringing the Desert Eagle into Shehee's home. Given testimony from the mother of Petitioner's child that the Desert Eagle responsible for firing the fatal bullet belonged to Petitioner, evidence that Mayberry sometimes carried weapons does <u>not</u> seem likely to have dissuaded a jury from concluding that the weapon used was Petitioner's. Accordingly, exclusion of any such evidence was not so egregious as to deny fundamental fairness, nor did it have a substantial and injurious effect on the verdict. Petitioner's request for habeas relief on that basis should be denied.

> *<u>Amended Petition, Ground for Relief #2</u>: "The Trial Court violated Petitioner's Due Process rights, as guaranteed by the United States and Ohio Constitutions, by failing to instruct the jury on self-defense and voluntary manslaughter."*

> *<u>Amended Petition, Ground for Relief #3</u>: "Ineffective Assistance of trial counsel, in violation of Sixth Amendment right, by counsel's failure to request an instruction on self defense and voluntary manslaughter."*

Petitioner's commentary as to these two related Grounds for Relief is that "[a] trial court is required to give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and fulfill its duty as the factfinder," and  that "[c]ounsel was ineffective for failing to request either a self defense or a voluntary manslaughter instruction, in light of the evidence presented at trial."

(Doc. #14 at ¶12).  Respondent urges that the first such claim is not cognizable.

(Doc. #5 at 5-6).  He also urges that any claim based on the absence of a voluntary

manslaughter instruction is procedurally defaulted and lacks substantive merit

(*id.* at 6-10), and that the absence of a self-defense instruction did not infringe any

constitutional right.  (*Id.* at 10-12).

As evidenced by his third Ground for Relief asserting ineffective assistance

of counsel, Petitioner admits that his trial attorney did not request voluntary

manslaughter and self-defense instructions.  A trial judge's failure to give a jury

instruction that the defendant did not request is not an error cognizable through

a federal habeas proceeding.  *Miller v. Grant*,19 F.3d 1433 [table], 1994 WL 102977

(6th Cir. 1994) (citing *Manning v. Rose*, 507 F.2d 889, 895 (6th Cir. 1974)).

Petitioner's claim that the trial court erred by failing to give such instructions to

the jury *sua sponte* therefore is a claim for which relief is not available in this

action.

To the extent premised on the lack of a voluntary manslaughter

instruction, Petitioner's second Ground for Relief not only is non-cognizable, but

also is procedurally defaulted.  Ohio law provides that failure to object

contemporaneously to a perceived trial court error creates a procedural bar to

review of that error on direct appeal.  *See, e.g., Gulertekin v. Tinnelman-Cooper*, 340

F.3d 415, 423-24 (6th Cir. 2003); *Scott v. Mitchell,* 209 F.3d 854, 866 (6th Cir.), *cert. denied*, 531 U.S. 1021 (2000). A court nonetheless may perform a limited review of the record to ensure that the alleged error does not amount to a plain error affecting a substantial right. *See* Fed. R. Crim. P. 52(b); *State v. Ballew*, 667 N.E.2d 369 (1996), *cert. denied,* 519 U.S. 1065 (1997).

Although the state appellate court in Petitioner's case did address his challenge to the trial court's failure to give a voluntary manslaughter instruction, the appellate court explicitly limited its review to plain error, noting that "[Petitioner] concedes that he did not request [a voluntary manslaughter] instruction, but he claims that it was plain error for the court not to give [such an] instruction." (Doc. #5, Exh. 12 at 12). It is well-settled that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas corpus review. *See, e.g., Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). The Ohio Supreme Court's later decision in Petitioner's case presumably reflects its enforcement of that bar rather than rejection of the claim on its merits. *See id.* ("[W]e view a state appellate court's review for plain error as the enforcement of a procedural default"); *see also Seymour*, 224 F.3d at 557 ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules."). Petitioner thus can

overcome his procedural default only by demonstrating cause and prejudice. *See Hinkle*, 271 F.3d at 244.

Because – as the state appellate court found – the evidence in Petitioner's case did not warrant a voluntary manslaughter instruction, trial counsel's purported ineffectiveness in failing to request such an instruction does not serve as "cause" for Petitioner's procedural default. (Doc. #5, Exh. 12 at 14). The appellate court expounded on the meaning of voluntary manslaughter under Ohio law as follows:

> Aggravated murder and murder differ from voluntary manslaughter in that the perpetrator of a voluntary manslaughter causes the death of another while acting under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force. [Ohio Rev. Code] 2903.03(A).

(*Id.* at 12-13). Explaining that the elements of voluntary manslaughter were not present in Petitioner's case, the  appellate court then upheld the trial court's decision not to instruct on voluntary manslaughter:

> In Florence's case, the trial court could have reasonably concluded that Florence had not satisfied the objective element of voluntary manslaughter: that provocation had been reasonably sufficient to bring on sudden passion or a fit of rage. This was not a situation in which Florence had suddenly come upon his girlfriend in bed with another man. Florence had apparently seen

> Mayberry arrive at the apartment only moments before the attack. The trial court could have reasonably concluded that Mayberry's arrival at Shehee's house, without more, was insufficient to reasonably justify a fit of rage that was sufficient to incite the use of deadly force. Accordingly, it was not plain error for the trial court to refuse to instruct on voluntary manslaughter.

(*Id.* at 14).

Applying the same rationale and the standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1994), the Ohio Court of Appeals likewise concluded that trial counsel was not constitutionally deficient in failing to request such an instruction. Petitioner's traverse, however, implies that counsel's performance was *per se* deficient because "the trial court invited defense counsel to [argue] why [a voluntary manslaughter] instruction would be appropriate" and "[h]ad counsel requested" such an instruction, it "would have been given" and "would have had an effect on the jury." (*See* Doc. #16 at 8). The record does not bear out Petitioner's position. To the contrary, the trial judge clearly communicated to defense counsel his disinclination to give a voluntary manslaughter instruction, and the state appellate court concluded that omission of such an instruction was not error. Petitioner has not demonstrated that the state court's determination to that effect was based on an unreasonable assessment of the facts or involved an unreasonable application of *Strickland* or other clearly established Supreme Court

law.  Accordingly, ineffective assistance of counsel serves neither as cause for the procedural default of Petitioner's claim re the missing jury instruction nor as an independent claim for relief, as asserted in ground three.  Having failed to establish his innocence,[3] Petitioner has waived his claim challenging the trial court's failure to instruct on voluntary manslaughter.

In addition to being non-cognizable and procedurally defaulted, Petitioner's jury instruction claim concerning voluntary manslaughter also fails to raise constitutional concerns.  In *Beck v. Alabama*, 447 U.S. 625 (1980), the United States Supreme Court held that a capital murder defendant has a constitutional right in certain situations to have the jury instructed on a lesser-included offense. 447 U.S. at 638.  When a jury is given only the options of "not guilty" or "guilty of capital murder," the risk that the jury will convict despite having reasonable doubt is too great, so in that limited context, a lesser-included non-capital offense instruction is required where evidence supports it.  *Id*.  The Court in *Beck* expressly declined to decide "whether the Due Process Clause would require the giving of such instruction in a <u>non-capital</u> case."  *Id*. at 635, n.7 (emphasis added).

The United States Court of Appeals for the Sixth Circuit subsequently

---

[3]Although Petitioner's supplemental traverse makes a blanket assertion that giving the subject instructions "would have resulted in a different outcome" (Doc. #16 at 7), he offers nothing to substantiate that optimistic appraisal.

addressed that reserved issue in *Bagby v. Sowders*, 894 F.2d 792 (6th Cir.) (*en banc*),

*cert. denied*, 496 U.S. 929 (1990), and refused to extend *Beck* to encompass federal

habeas corpus review of a non-capital state conviction. The Court reasoned as

follows:

> It appears to us that the Supreme Court's opinion in *Beck* is grounded upon Eighth Amendment concerns, rather than those arising from the Due Process Clause of the Fourteenth Amendment. If we are correct in that assessment, then we are not required to extend *Beck* to noncapital cases. Instead, we must determine whether the error asserted by [petitioner] is of the character or magnitude which should be cognizable on collateral attack. Is the failure to instruct on lesser included offenses in noncapital cases such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure? *See Hill v. United States*, 368 U.S. 424, 428, 7 L. Ed. 2d 417, 82 S. Ct. 468 (1962). Experience tells us that it is not.
>
> Our view, that it is not an error of such character and magnitude to be cognizable in federal habeas corpus review, is shared by a majority of the circuits. *See, e.g., Chavez v. Kerby*, 848 F.2d 1101 (10th Cir. 1988); *Perry v. Smith*, 810 F.2d 1078 (11th Cir. 1987); *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985); *Nichols v. Gagnon*, 710 F.2d at 1269 [(7th Cir. 1983), *cert. denied*, 466 U.S. 940 (1984)]; *James v. Reese*, 546 F.2d 325 (9th Cir. 1976); *DeBerry v. Wolff*, 513 F.2d 1336 (8th Cir. 1975); *but cf. Vujosevic v. Rafferty*, 844 F.2d 1023 (3d Cir. 1988).

*Bagby*, 894 F.2d at 797-98.

Later, in *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001), *cert. denied,* 535

U.S. 975 (2002), the same court noted that "the Constitution does not require a lesser-included offense instruction in non-capital cases." A year later, the Sixth Circuit ruled as follows:

> Although the Supreme Court has held that it is a violation of due process for a court to fail to instruct on a lesser included offense supported by the evidence in a capital case, see *Beck v. Alabama*, 447 U.S. 625, 627, 65 L. Ed. 2d 392, 100 S. Ct. 2382 (1980), it has not so held in noncapital cases. To the contrary, the Sixth Circuit has held that failure to instruct on a lesser included offense in a noncapital case is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990). For all of these reasons, [the petitioner] is not entitled to habeas relief on this claim.

*Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002), *cert. denied,* 537 U.S. 1192 (2003).

Because the United States Supreme Court specifically declined to decide whether the failure to give a lesser-included offense instruction in a non-capital case violates the Due Process Clause, the state appellate court's decision affirming the trial court's failure to give an instructions on the inferior degree of aggravated murder is not contrary to or an unreasonable application of clearly established Supreme Court precedent. *See Tegeler v. Renico,* 253 F. App'x 521, 525 (6th Cir. 2007) ("An argument based on an 'open question in [the Supreme Court's] jurisprudence' necessarily does not show that the state courts violated

'clearly established Federal law, as determined by the Supreme Court'.").

Given the Ohio Court of Appeals' finding that the evidence did not show that the victim had seriously provoked Florence, the trial court's failure to give a voluntary manslaughter instruction *sua sponte* did not constitute a defect so fundamental as to cause a miscarriage of justice. For this additional reason, then, Petitioner's claim as to the absence of a voluntary manslaughter instruction to the jury does not warrant habeas corpus relief.

Petitioner also contends, however, that the trial court erred not only in failing to give a voluntary manslaughter instruction, but in failing *sua sponte* to provide a self-defense instruction to the jury.

In *Taylor v. Withrow*, 288 F.3d 846, 851 (6th Cir.), *cert. denied,* 537 U.S. 1007 (2002), the Sixth Circuit recognized that some principles are "so rooted in the traditions and conscience of our people as to be ranked as fundamental," and that deprivation of such principles would constitute constitutional error. *Id.* (citing *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)). The Court then held

> that the right of a defendant in a criminal trial to assert self-defense is one of those fundamental rights, and that failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the due process clause.

*Id.* Nevertheless, "the right to present inconsistent defenses is not so widespread or well-established as to be a fundamental rule essential for due process," *id.* at 854, and a defendant is entitled to a self-defense instruction only when "there exists evidence sufficient for a reasonable jury to find in his favor." *Id.* at 853 (quoting *Mathews v. United States*, 485 U.S. 58, 63-64 (1988)).

In Petitioner's case, the Ohio Court of Appeals determined that a self-defense instruction would have been inconsistent with Florence's claim that he shot Mayberry accidentally:

> A person's use of force in self-defense is necessarily a purposeful act. Implicitly, then, force that occurs accidentally does not qualify to be treated as self-defense. *State v. Marbury*, Montgomery App. No. 19226, 2004 Ohio 1817, P16. In other words, the defenses of accident and self-defense are mutually exclusive concepts. *State v. Barnd* (1993), 85 Ohio App.3d 254, 260, 619 N.E.2d 518. The trial court properly refused to instruct on the mutually exclusive defenses of accident and self-defense. According to Florence's version of events, he shot Mayberry accidentally, not purposefully. As such, the trial court's instruction on accident was the appropriate instruction to give.

(Doc. #5, Exh. 12 at 15).

In this situation, the trial court's failure to provide a self-defense instruction did not amount to constitutional error. Similarly, the Ohio Court of Appeals' ruling upholding the trial court's decision did not involve an

unreasonable application of clearly established federal law or an unreasonable

determination of the facts. *See Taylor*, 288 F.3d at 853-54 (where defendant

claimed accidental shooting and state law required intentional act for self-defense

instruction, failure to give such instruction not constitutional error); *Garrison v.

Gundy*, No. 1:04cv196, 2006 WL 2356218, at *10 (W.D. Mich. Aug. 14, 2006)

(adopting Report and Recommendation) (since petitioner had no constitutional

right to inconsistent defenses, trial court's failure to *sua sponte* issue inconsistent

instructions for self-defense and accident did not violate petitioner's

constitutional rights).

Because the evidence in Petitioner's case did not warrant a self-defense

instruction, the Ohio Court of Appeals also determined that trial counsel was not

constitutionally deficient in failing to request such an instruction. (Doc. #5, Exh.

12 at 16). Again, despite his insistence that such an instruction "would have been

given" if requested and "would have had an effect on the jury" (Doc. #16 at 8),

Petitioner has not established that the state appellate court's determination that

trial counsel's performance passed constitutional muster was based on an

unreasonable application of *Strickland* or an unreasonable determination of the

facts. Accordingly, he is not entitled to habeas corpus relief with respect to the

ineffective assistance of counsel claim asserted as his third Ground for Relief.

> *Amended Petition, Ground for Relief #4*: *"The Trial Court violated Petitioner's right to Confront Witnesses, and right to Due Process, by allowing in out of court statements under the 'excited utterance' hearsay objection."*

Specifically, Petitioner challenges the trial court's admission "as substantive evidence" of "the out-of-court statements of witnesses Sheehee [sic], Baldwin, Zlholz and Williams [sic] in a 911 call." (Doc. #14 at ¶12). His traverse urges that statements made in 911 calls do not qualify as excited utterances "made in the spur of the moment." (Doc. #16 at 9). Respondent counters that the admission of such statements does not implicate the Confrontation Clause. (Doc. #15 at 12-13).

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that the accused in any criminal prosecution has the right to confront the witnesses against him. *Ohio v. Roberts*, 448 U.S. 56, 62-63 (1980). Because a literal interpretation of that clause would require that all hearsay statements be excluded, however, the goal of ensuring "face-to-face confrontation at trial" must be reconciled with "a societal interest in accurate factfinding, which may require consideration of out-of-court statements." *Bourjaily v. United States*, 483 U.S. 171, 182 (1987) (citing *Roberts*, 448 U.S. at 63). Under Supreme Court precedent, the Confrontation Clause does <u>not</u> bar admission of out-of-court statements – including prior testimony in response to police interrogation – so

long as the declarant is available to be cross-examined.  *Crawford v. Washington*, 541 U.S. 36, 59, 68 (2004).

The sole case relied upon by Petitioner for the proposition that 911 calls are not admissible at trial (*see* Doc. #16 at 9) actually made clear that the calls at issue there were excluded because they had been "made  by a witness not present at trial." *United States v. Arnold*, 410 F.3d 895, 902 (6th Cir. 2005).[4]  In the instant case, the record demonstrates that witnesses Shehee, Baldwin, Williamson[5] and Officer Zlholz all testified at Petitioner's trial and thus were subject to cross-examination.  (*See, e.g.*, Doc. #15, Exhs., Trial Transcript Vol. 1 at 64-85; Vol. 2 at 3-68 [Shehee testimony], 70-95 [Baldwin testimony], 95-113 [Williamson testimony]; Vol. 5 at 8-14 [Zlholz testimony]).  In addition, the state appellate court specifically noted that Office Zlholz "did not testify as to the substance of any of Shehee's [out of court] statements."  (Doc. #4, Exh. 12 at 11).  Accordingly, the trial court's admission of any out-of-court statements by those witnesses had no constitutional implications amenable to habeas relief.

> <u>*Amended Petition, Ground for Relief #5*</u>:  *"Petitioner was deprived the effective assistance of Appellate Counsel when he failed to raise the issue of trial counsel's ineffectiveness for failing to object to the trial court's error when in a*

---

[4]Moreover, this decision subsequently was vacated after rehearing *en banc*.  *See United States v. Arnold*, 486 F.3d 187 (6th Cir. 2007), *cert. denied*, 552 U.S. 1103 (2008).

[5]Although the amended petition refers to out-of-court statements by a witness "Williams" made "in a 911 call" (*see* Doc. #14 at ¶12, Ground Four), the trial transcript makes clear that the 911 caller in fact was Shehee's mother, Ruth William<u>son</u>.  (*See* Doc. #15, Exh. 5 at 95-96, 110).

> *prosecution for crime the trial court during jury instructions equates 'innocence' with 'not guilty' the court creates a conclusive mandatory presumption that not only shifts the burden of proof but also directs a verdict against the defendant and is plain error and a manifest miscarriage of justice."*

By way of elaboration, Petitioner merely repeats his claim that "[t]he trial court shifted the burden of proof and direct[ed] a verdict against" him  (Doc. #14 at ¶12) because "the instruction at issue restricted the jury's duty to a consideration of gu[ ]ilt or innocence."  (Doc. #16 at 10).

For the reasons stated *supra* with respect to the virtually identical second Ground for Relief raised in Petitioner's original Petition (*see* Doc. #2 at ¶12), this claim both is waived by Petitioner's procedural default and lacks substantive merit.

**IT THEREFORE IS RECOMMENDED THAT:**

    1) Petitioner Lamar Florence's petition for writ of habeas corpus (Doc. #2) and first amended petition for writ of habeas corpus (Doc. #14) be DENIED and DISMISSED with prejudice;

    2) That Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability; and,

    3) This matter be TERMINATED on the docket of this Court.

March 29, 2010

   s/Sharon L. Ovington   
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).